UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSPEH JOHN SLACK,<br><br>        Plaintiff,<br><br>   v.<br><br>OFFICE OF ATTORNEY GENERAL, et al.,<br><br>        Defendants. | CIVIL ACTION NO. 3:22-CV-01501<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Joseph John Slack ("Slack") commenced this action on September 26, 2022, by filing a complaint. (Doc. 1). On January 3, 2023, Slack filed the operative amended complaint against Defendants Special Agent Robert McHugh ("Agent McHugh"), State Trooper Michael J. Mulvey ("Trooper Mulvey"), Senior Deputy Attorney General Erik L. Olsen ("SDAG Olsen"), and Chief District Attorney General Brian M. Zarallo ("CDAG Zarallo") (collectively, "Defendants") alleging a false arrest and malicious prosecution claim under the Fourth Amendment pursuant 42 U.S.C § 1983. (Doc. 14). Presently before the Court is a motion to dismiss the amended complaint filed by Defendants. (Doc. 19). For the following reasons, the motion will be **GRANTED**.

I.    **PROCEDURAL AND FACTUAL BACKGROUND**

    A.   FACTUAL BACKGROUND

The following factual background is taken from the operative amended complaint. (Doc. 14). At all relevant times, Slack was the daytime maintenance supervisor for the Scranton School District ("the District"). (Doc. 14, ¶ 15). In this role, he acted as a liaison

between the District's custodial staff and the District's upper management. (Doc. 14, ¶¶ 18-20). As the District's daytime maintenance supervisor, Slack "did not have any authority to establish policies and procedures, enter into third-party contracts, or hire and fire any employees" and "as not responsible for scientific interpretation of environmental facility testing results, legal determination of environmental regulatory compliance, or strategic environmental remediation planning or execution." (Doc. 14, ¶¶ 21, 22).

During his employment, Slack reported to the District's Chief Operations Officer, Jeffry Brazil ("Brazil"). (Doc. 14, ¶ 26). Starting in 2016, Brazil initiated voluntary testing of drinking water sources in schools throughout the District. (Doc. 14, ¶ 31). This testing revealed lead in numerous drinking water sources in schools throughout the District. (Doc. 14, ¶ 32). Slack was not involved in or informed of the 2016 lead testing. (Doc. 14, ¶ 36).

In 2018, after receiving emails from the Pennsylvania Senate regarding new legislation affecting the District's obligation to test schools' drinking water, the District again tested drinking water sources in schools throughout the District. (Doc. 14, ¶¶ 37-42). After the results from this testing were emailed to Brazil, he forwarded them to the Superintendent of Scranton School District ("the Superintendent") and Slack. (Doc. 14, ¶¶ 42, 44). While it was not his duty to do so, in response to the email Slack attempted to identify all unsafe water sources within the schools and turn them off. (Doc. 14, ¶[1] 46-49). Slack also created warning signs for the water sources that stated: "DO NOT DRINK WITH OR COOK WITH." (Doc. 14, ¶¶ 46-49). In response to his efforts, the Superintendent reprimanded Slack and forbade him from taking any additional remediation steps except at her behest. (Doc. 4, ¶ 50). "Unbeknownst to [] Slack, his placement of the visual warning signs occurred before [the Superintendent]

2

had even reported the 2018 testing results to the Scranton School Board of Directors, prompting questions and concern by various Scranton School District staff and students." (Doc. 14, ¶ 51).

In December of 2019, Trooper Mulvey and Agent McHugh began investigating the District's compliance with U.S. Environmental Protection Agency ("EPA") regulations for public drinking water, the Pennsylvania Department of Environmental Protection ("PADEP") regulations for public drinking water, and the Pennsylvania Public School Code ("PSC") of 1949 as was amended in 2018.[1] (Doc. 14, ¶ 59). After speaking to officials in the District and pursuant to their investigation, on February 6, 2020, Slack was issued a subpoena to appear before the Forty-Fourth Statewide Investigating Grand Jury ("Grand Jury"). (Doc. 14, ¶¶ 67, 71). On September 18, 2020, the Grand Jury recommended criminal proceedings against Slack in connection with lead detected in schools in the District. (Doc. 14, ¶ 17). The Grand Jury recommended proceedings for recklessly endangering another person, 18 Pa. C.S.A. §2705, and endangering the welfare of children, 18 Pa. C.S.A. §4304(a)(1). (Doc. 14, ¶ 71). In September 2020, upon the Affidavit of Trooper Mulvey and Agent McHugh, SDAG Olsen filed a Police Criminal Complaint charging Slack with (a) three first grade felony counts of endangering the welfare of children under the age of six; (b) eight second grade felony counts of endangering the welfare of children under the age of 18; and (c) eight second grade

---

[1] The 2018 Amendments to the PSC require that, if testing results positively identify drinking water sources containing levels of lead in excess of the EPA's "Remediation Trigger Level," school districts must "immediately implement a plan" to prevent exposure to the contaminated water and to make alternative sources of drinking water available. (Doc. 14, ¶ 30); *see Public School Code of 1949*, Act of June 22, 2018, P.L. 241, No. 39.

misdemeanor counts of recklessly endangering another person. (Doc. 14, ¶ 73). SDAG Olsen specifically charged:

> . . . being a parent, guardian, or other person supervising the welfare of a child under the age of 18, [Mr. Slack] did knowingly endanger the welfare of children by violating a duty of care, protection, or support, namely, by ignoring repeated reports of widespread environmental hazards in the Scranton School District, despite his responsibilities to ensure the health and safety of thousands of students . . . TO WIT: [Mr. Slack] failed to address the exposure to known levels of lead in water. . . . . . [Mr. Slack] did recklessly engage in conduct which placed or may have placed thousands of Scranton School District students, employees, staff, and members of the public visiting the buildings . . . in danger of death or serious bodily injury, that is to say [Mr. Slack] did ignore repeated reports of widespread environmental hazards in the Scranton School District, despite his responsibilities to ensure the health and safety of thousands of students, staff, and visitors . . . TO WIT [Mr. Slack] failed to address the exposure to known levels of lead in water. . .
>
> (Doc. 14, ¶ 75).

Slack was arrested, arraigned, and released on bond on September 30, 2020. (Doc. 14, ¶ 83, 88).

On September 30, 2020, the Office of the Attorney General issued a press release stating that Slack, along with Brazil and the Superintendent, had exposed children to dangerous levels of lead, failed to protect children from asbestos, and hid the truth from the public. (Doc. 14, ¶ 89). In the following months, Slack was subjected to negative media attention, threats from the public, and the onset of criminal litigation against him. (Doc. 14, ¶¶ 97-99). During this time, Slack provided the Office of the Attorney General with a written statement and proffered testimony explaining his role in the water source testing and his curbed attempts to warn people not to drink from water sources in the District. (Doc. 14, ¶ 100). After receiving this testimony, through CDAG Zarallo, the Commonwealth withdrew its charges against Slack on June 14, 2021. (Doc. 14, ¶ 113).

B. Procedural Background

In his amended complaint, Slack puts forth the following Counts: Count I: False Arrest in Violation of the Fourth Amendment under 42 U.S.C. § 1983 against Agent McHugh, SDAG Olsen, and Trooper Mulvey; and Count II Malicious Prosecution in Violation of the Fourth Amendment under 42 U.S.C. § 1983 against SDAG Olsen, CDAG Zarallo, and Trooper Mulvey. (Doc. 14, at 23-25). On January 18, 2023, Defendants filed the instant motion to dismiss and a brief in support. (Doc. 19; Doc. 20). On February 8, 2023, Slack filed a brief in opposition. (Doc. 21). On February 23, 2024, Defendants filed a reply brief (Doc. 22). Accordingly, the motion is ripe and brief for discussion.

## II. Legal Standards

### A. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

5

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v.*

*President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### B.  42 U.S.C. SECTION 1983

Slack asserts claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence*.*" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)

**III.    DISCUSSION**

    A.    PROSECUTORIAL IMMUNITY

Defendants argue that CDAG Zarallo and SDAG Olsen are entitled to prosecutorial immunity for the claims asserted against them. (Doc. 20, at 6-10). According to Slack, prosecutorial immunity does not apply to CDAG Zarallo or SDAG Olsen because his "claims for false arrest and malicious prosecution stem from SDAG Olsen and CDAG Zarallo actions [sic] completed in their investigative and administrative functions, outside of a courtroom and outside of investigating grand jury proceedings." (Doc. 21, at 21). Further, Slack avers that SDAG Olsen and CDAG Zarallo "attempt to shield their investigatory and administrative acts by expanding the scope of grand jury and court proceedings to include any and all of their actions taken while those proceedings were pending." (Doc. 21, at 23).

It is well settled that prosecutors enjoy absolute immunity for actions "intimately associated with the judicial phase of the criminal process . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "More than a mere defense to liability, prosecutorial immunity embodies the 'right not to stand trial' . . . and is properly raised in a Rule 12(b)(6) motion to dismiss." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal citations omitted). "[W]hether a prosecutor is entitled to absolute immunity for his/her conduct depends on the function the prosecutor was performing." *Segers v. Williams*, 12 F. Supp. 3d 734, 738 (E.D. Pa. 2014). As such, a prosecutor is absolutely immune from suit with respect to actions he or she performed in a judicial or quasi-judicial capacity, but "not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208 (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)). Relevant here, the Supreme Court has

8

held that a prosecutor is immune from suit under § 1983 "in initiating a prosecution and in presenting the State's case." *Imbler*, 424 U.S. at 431.

Slack's allegations against CDAG Zarallo and SDAG Olsen stem from the exercise of their discretion to prosecute Slack and from their participation in his resulting criminal case up and through the Office of the Attorney General's decision to withdraw charges. (Doc. 14, at 18-23). While Slack complains that, for the purposes of his claims, CDAG Zarallo and SDAG Olsen were not acting pursuant to their prosecutorial duties but in an administrative and investigatory capacity, the amended complaint fails to detail any investigatory or administrative tasks completed by SDAG Olsen or CDAG Zarallo. (Doc. 14; Doc. 21, at 23). Each factual allegation implicating CDAG Zarallo involves him acting pursuant to his advocacy functions, including filing motions, scheduling Slack's proffer of testimony, and requesting a concurrence in a continuance. (Doc. 14, ¶¶ 107-112). Similarly, the allegations against SDAG Olsen implicate him in acting as an advocate, including his preparation of a criminal complaint against Slack, obtaining Slack's proffered testimony, filing court documents, and discussing the viability of Slack's case. (Doc. 14, ¶¶68, 73, 75, 95, 103, 106). Thus, when taken as true in the light most favorable to Slack, the allegations in the amended complaint do not suggest that CDAG Zarallo or SDAG Olsen acted in any way unrelated to their pursuit of a criminal case against Slack, or otherwise outside the scope of their official duties as prosecutors. (Doc. 14); *See Imbler*, 424 U.S. at 431; *Schrob v. Catterson*, 948 F.2d 1402, 1414, 1416 (3d Cir. 1991) (finding that prosecutorial immunity extends to the "preparation necessary to present a case" as well as "obtaining, reviewing, and evaluation of evidence.") (citing *Imbler*, 424 U.S. at 431, n.33); *see also Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989)

("direct solicitations of testimony for use in the grand jury proceedings . . . are encompassed within 'the preparation necessary to present a case' and[,] therefore[,] are immunized as involving the prosecutors' advocacy functions."). Accordingly, as the gravamen of Slack's claims pertain to conduct "intimately associated with the judicial phase of the criminal process," CDAG Zarallo and SDAG Olsen are entitled to absolute prosecutorial immunity from Slack's claims against them. Defendants' motion to dismiss is thus **GRANTED** on this basis and CDAG Zarallo and SDAG Olsen are **DISMISSED** from this action.

B. PRESUMPTION OF PROBABLE CAUSE

Defendants argue that their motion to dismiss should be granted because Slack has failed to rebut the presumption of probable cause established by his grand jury presentment. (Doc. 20, at 10; Doc. 22, at 4). Slack counters that Defendants' motion to dismiss should be denied because "no such presumption attaches to a grand jury presentment and in such cases, the prosecutor is the arbiter of any charging document." (Doc. 21, at 24).

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). In order to establish a Fourth Amendment malicious prosecution claim, a plaintiff must be able to satisfy the common law elements of a malicious prosecution claim. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000). Thus, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to

10

justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996). Accordingly, both Slack's Fourth Amendment claims require a showing that Defendants lacked probable cause.

The Third Circuit has concluded that "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute[.]" *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989); *see also Pittman v. McDuffy*, 240 F. App'x 524, 527 n.6 (3d Cir. 2007). To defeat this presumption, a plaintiff must show that the presentment was "procured by fraud, perjury, or other corrupt means." *Rose*, 871 F.2d at 353; *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013). This is where Slack's false arrest and malicious prosecution claims fail. In his amended complaint, Slack does not allege that the Grand Jury's presentment against him was "procured by fraud, perjury, or other corrupt means." (Doc. 14); *Rose*, 871 F.2d at 353. As such, the Grand Jury's presentment constitutes prima face evidence of probable cause to prosecute. As Slack has failed to allege an absence of probable cause, he not sufficiently plead a claim for either false arrest or malicious prosecution against Defendants. Accordingly, Slack's claims for false arrest and malicious prosecution against all Defendants are **DISMISSED**, and Defendant's motion to dismiss is **GRANTED** as it relates to these claims.

IV.    **LEAVE TO AMEND**

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment

would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In civil rights cases, District Courts are to follow this instruction "even [if] the plaintiff [is] represented by experienced counsel [and] never sought leave to amend." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (citing *Dist. Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986)). In this case, the Court will grant Slack leave to file a second amended complaint in an attempt to cure the deficiencies outlined herein. *Grayson*, 293 F.3d at 108.

## V. CONCLUSION

Based on the forgoing, Defendants' motion to dismiss is **GRANTED**. (Doc. 19). Both Count I and Count II of Slack's amended complaint are **DISMISSED WITHOUT PREJUDICE**. Slack will be granted 21 days to file a second amended complaint to remedy the deficiencies set forth in this Memorandum, on or before **June 24, 2024**. If Slack fails to file a second amended complaint on or before June 24, 2024, this action will be closed.

An appropriate Order follows.

Dated: June 3, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**